**FILED**
6/20/2024
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

AO 91 (Rev. 11/11) Criminal Complaint                                    AUSA Jasmina Vajzovic (312) 469-6233

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

UNITED STATES OF AMERICA

v.

KENNY ROUNDTREE WILSON and
ALLEN DEAN

CASE NUMBER:   24 CR 315

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief:

### Count One

On or about June 18, 2024, at Chicago, in the Northern District of Illinois, Eastern Division, defendant KENNY ROUNDTREE WILSON violated:

| Code Section | Offense Description |
| --- | --- |
| Title 18, United States Code, Section 2113(a) | by force and violence and by intimidation, did take from the person and presence of a bank employee approximately $2,488 in United States currency belonging to, and in the care, custody, control, management, and possession of the PNC Bank, located at 3940 North Harlem Avenue in Chicago, Illinois, the deposits of which were then insured by the Federal Deposit Insurance Corporation. |

### Count Two

On or about June 18, 2024, at Chicago, in the Northern District of Illinois, Eastern Division, defendant KENNY ROUNDTREE WILSON violated:

| Code Section | Offense Description |
| --- | --- |
| Title 18, United States Code, Section 924(c) | did use, carry, and brandish a firearm during and in relation to a crime of violence, namely bank robbery in violation of Title 18, United States Code, Section 2113(a) |

### Count Three

On or about June 18, 2024, at Chicago, in the Northern District of Illinois, Eastern Division, defendant ALLEN DEAN violated:

| Code Section | Offense Description |
| --- | --- |
| Title 18, United States Code, Section 922(g)(1) | knowing that he had been convicted of a crime punishable by a term of imprisonment exceeding one year, did knowingly possess, in and affecting interstate commerce, a Glock, Inc. 43 9mm semi-automatic handgun bearing serial number BATC989, which firearm had traveled in interstate commerce prior to his possession of the firearm |

This criminal complaint is based upon these facts:

  X   Continued on the attached sheet.

_____

JOHN HANLON
Special Agent, Federal Bureau of Investigation
(FBI)

Pursuant to Fed. R. Crim. P. 4.1, this Complaint is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the Complaint and Affidavit by telephone.

Date: June 20, 2024        10:35am        _____
                                          *Judge's signature*

City and state: Chicago, Illinois        JEFFREY COLE, U.S. Magistrate Judge
                                                  *Printed name and title*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

## **AFFIDAVIT**

I, JOHN HANLON, being duly sworn, state as follows:

1.      I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been so employed since April 2023. My current responsibilities include the investigation of violent crimes, including, among others, kidnapping, bank robbery, and the apprehension of violent fugitives.

2.      This affidavit is submitted in support of a criminal complaint alleging that KENNY ROUNDTREE WILSON committed bank robbery, in violation of Title 18, United States Code, Section 2113(a); brandished a firearm in connection with that bank robbery, in violation of Title 18, United States Code, Section 924(c); and that ALLEN DEAN unlawfully possessed a firearm as a felon, in violation of Title 18, United States Code, Section 922(g)(1).

3.      Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the defendants committed the offenses alleged in the complaint.

4.      The statements in this affidavit are based on multiple sources, including but not limited to: my personal knowledge, information provided to me by other law enforcement agents, my review of photos and video recordings related to this

investigation, my review of law enforcement databases, my review of reports and documents related to this investigation, my training and experience and the training and experience of other law enforcement agents and officers with whom I work, and information provided to me by persons with knowledge regarding relevant facts.

## I.    FACTS SUPPORTING PROBABLE CAUSE

5.    As described further below, on June 18, 2024, an individual believed to be WILSON, robbed at gunpoint the PNC Bank located at 3940 North Harlem Avenue in Chicago, Illinois. Following the robbery, WILSON stowed the firearm used in the robbery, as well as the money obtained from the robbery and clothing and other items used during the robbery, in a car driven by DEAN, who knew that the firearm was in his car and is a convicted felon.

### *Robbery of PNC Bank on June 18, 2024*

6.    According to Teller One, on or about June 18, 2024, at approximately 9:47 a.m., a heavy-set black male, approximately 5'10" – 5'11", wearing a large hat with a circular brim, black long-sleeve shirt, and full beard ("the robber"), entered the PNC Bank located at 3940 North Harlem Avenue in Chicago, Illinois ("the bank") and sat in a chair in the bank lobby. According to Teller One, another employee of the bank then asked the robber if he wanted water. According to Teller One, the robber appeared to be covering his face with a navy-blue towel. The robber then approached Teller One's window and produced a white plastic bag, which he passed across the counter to Teller One. The robber displayed a black handgun and told Teller One something to the effect of "Give me the money or I'll shoot you."

7. According to Teller One, s/he then pulled United States Currency from one of his/her teller drawers and placed the currency in the white plastic bag. According to Teller One, s/he included "bait bills" and a bank location tracker in the bag. Based on my training and experience, "bait bills" are United States Currency of which the serial numbers have been recorded by the bank. Banks record these bills so that, in the event they are stolen and eventually recovered, they can be sourced to the bank. After Teller One placed the items in the plastic bag, the robber exited the bank.

8. According to Banker 1, who is an employee at the bank, at approximately 9:47 a.m., Banker 1 observed a black male with a dark complexion, a large build, approximately 5'6"-5'7", wearing dark clothing enter the bank. According to Banker 1, the male held a blue cloth in front of his face when he entered the bank and during Banker 1's interaction with him. Banker 1 greeted him upon his entering, and the male complained that he could not breathe. Banker 1 directed him to take a seat, and the male requested water from him/her. S/he went to retrieve a bottle of water for him, and upon Banker 1's return, s/he observed that the male was near the teller counter, pointing a firearm at Teller One, and stating words to the effect of "give me the money or I will shoot," to Teller One. Additionally, Banker 1 heard the male counting down out loud, which s/he understood to mean he would begin shooting in the bank if they did not comply with his demands. Banker 1 described the male's firearm as a black handgun.

9.    The bank was equipped with interior and exterior surveillance cameras at the time of the robbery. According to my review of surveillance footage from a camera in the bank lobby, which was angled towards the main entrance, at approximately 9:47 a.m., a black male wearing a dark colored round hat with a floppy brim, a dark-colored long-sleeve shirt, dark colored pants, and dark shoes entered the bank holding a blue cloth in front of his face. A light colored object can be seen near the base of his shoelaces. A screenshot from that video of the male entering the bank is depicted below:



10.    According to my review of additional cameras placed around the lobby of the bank, upon entering the bank, the male approached a greeting counter in the lobby where Banker 1 was seated. He then sat in a chair along the east windows in the lobby. The surveillance video showed him eventually rise from the chair, remove

a black object—which, based on my training and experience, appears to be a firearm—from the front left area of his waistband and proceed to Teller One's teller station. A camera behind the teller counter showed the male briefly lower the blue cloth from in front of his face before lifting it up again while he was at Teller One's teller station.

11.     Based on my review of surveillance footage from cameras located behind the teller counter, including a camera located immediately behind Teller One's workstation, the robber approached Teller One's station and passed a white plastic bag across the counter while holding the blue cloth between his teeth. He then pointed a dark colored firearm at Teller One, which can be seen in the screenshot below:



12.     According to the surveillance camera footage, while the robber was located at Teller One's teller station, Teller One filled up the plastic bag with currency from his/her station. The robber then grabbed the plastic bag and moved toward the same door through which he entered the bank in the main lobby. At approximately 9:49 a.m., multiple interior cameras show the robber exit the bank. An east-facing interior lobby camera and an exterior ATM camera on the east side of the bank captured the male running southbound along the east side of the bank after exiting the east entrance, which faces Harlem Avenue.

13.     Documentation provided by the bank showed that approximately $2,488, as well as additional bait bills, were taken from the teller's station, and that on June 18, 2024, the Bank was insured by the Federal Deposit Insurance Corporation ("FDIC"). A PNC Bank representative also provided law enforcement with a bait money register, which showed the denominations and serial numbers of the bait bills suspected to have been stolen in the robbery.

### Identification of Kenny Wilson as the Robber

14.     According to the bank, and based on my training and experience, I know that the location device (the "tracker") provided to the robber by Teller One was activated as soon as s/he removed it from the magnetic plate on which it was located. According to the location device tracker data, the tracker started recording movements at approximately 9:48 a.m., about a minute before the robber exited the bank, consistent with the approximate time that Teller One provided the currency and the device to the robber. According to my review of Chicago Police Department

(CPD) body-worn camera footage worn by CPD officers involved in the investigation, a CPD unit that monitored the bank's location tracker alerts provided live updates to officers in the field regarding the whereabouts of the tracker as it moved.

15. According to CPD Sergeant 1, Sergeant 1 was located near the bank when he heard through dispatch that the bank had been robbed. Sergeant 1 then heard the radio broadcasts regarding the location data of the tracker given to the robber. At approximately 9:53 a.m., Sergeant 1 located two white sport-utility vehicles ("SUVs") traveling southbound on Oketo Avenue, approximately six blocks from the bank, traveling in the same area and in the same direction as the tracker. Sergeant 1 also related that he believed the tracker was in a vehicle, based upon the speed at which it was moving per the updates he received. Sergeant 1 observed the two vehicles turn eastbound from Oketo Ave onto Belmont Ave. Sergeant 1 noted that the second vehicle was following the first vehicle closely and that the two vehicles' locations correlated with the location updates from the tracker. Sergeant 1 then observed the two vehicles driving side by side to each other near Harlem Avenue and Belmont Avenue and observed that the drivers of the vehicles appeared to be communicating to each other through open windows.

16.    My review of POD camera footage located near the intersection of Harlem Avenue and Belmont Avenue appears to show the two vehicles beside each other, as described by Sergeant 1:



17.     Information obtained from the tracker showed the tracker followed the same path as the vehicles, traveling southbound on Oketo Avenue and then eastbound on Belmont Avenue:



18.     According to CPD Office of Emergency Management and Communications (OEMC) records and a review of CPD body-worn camera footage, at approximately 9:55 a.m., law enforcement officers stopped the first white SUV at approximately 7049 West Belmont Avenue ("Vehicle 1") and the second white SUV at approximately 7101 West Belmont Avenue ("Vehicle 2"). Upon approaching Vehicle 1, officers observed a black male, later identified as WILSON, as the driver and sole occupant of the vehicle. A black male, later identified as DEAN, was the driver and sole occupant of Vehicle 2. Officers ordered both individuals out of the vehicles and detained them. According to the tracker

data, the tracker stopped moving at approximately 9:55 a.m., the same time the vehicles were stopped by law enforcement.

19.    According to my review of body-worn camera footage and information provided by the officers involved in WILSON's traffic stop, officers observed an empty gun holster on the left side of WILSON's front waistband. During the stop, WILSON was not wearing a shirt and the holster was plainly visible on his body.

20.    On the CPD body-worn camera footage, I observed WILSON wearing what appeared to be tan-colored pants, as well as dark colored shoes, similar in appearance to the pants and shoes worn by the bank robber. Further, the shoes appeared to have a light-colored metal object woven into the base of the shoelaces, which again appeared to be similar to the appearance of the shoes worn by the robber based on the surveillance video.

21.    According to a review of the body-worn camera footage of the officers who stopped Vehicle 2, which was driven by DEAN, shortly after DEAN was detained, Sergeant 1 asked DEAN if there was anything inside the vehicle. DEAN responded that there was possibly a firearm in the vehicle. Following DEAN's statement regarding the firearm, Sergeant 1 observed a white plastic bag and a Glock 43 semi-automatic handgun bearing serial number BATC989 under the driver's side seat of Vehicle 2.

22.    Upon a later inventory search, the plastic bag was found to contain the tracker, $2,448 in United States Currency, and additional bait bills. The United States Currency recovered in Vehicle 2 had serial numbers matching the bait bill register provided to law enforcement by PNC Bank. From the front passenger floorboard, law enforcement recovered clothing items, including a black long-sleeved shirt and dark-

colored round hat, which based upon my review of the bank surveillance footage, appear to be the same shirt and hat worn by the robber. Law enforcement also seized a blue cloth, consistent in appearance with the item used to cover the robber's face, from the front passenger floorboard.

23.     Law enforcement did not discover a firearm or any United States Currency in Vehicle 1, which WILSON was driving, upon a later inventory search.

24.     According to OEMC records and CPD body-worn camera footage, at approximately 10:15 a.m., about half an hour after the bank robbery, Teller One was asked to view DEAN, who was handcuffed and standing near where Vehicle 2 was stopped. Teller One did not identify DEAN as the robber. At approximately 10:17 a.m., Teller One was asked to view WILSON, who was handcuffed and standing outside of where Vehicle 1 was stopped. Teller One was not told that WILSON or DEAN were the robber or that s/he was required to identify either of the individuals as the robber. Teller One positively identified WILSON as the robber.

25.     On June 18, 2024, I personally interacted with both WILSON and DEAN. During those interactions, I observed WILSON to be a stocky black male, approximately 5'11" in height, with a full beard. I observed him to be wearing tan-colored pants. I observed DEAN to be a thin male black, approximately 5'11" or 6' in height. Based upon my review of the interior security cameras of the bank, DEAN does not appear to match the description of the male robber in the bank, because the male robber appears to have a larger build than DEAN.

***Interviews of WILSON and DEAN on June 18, 2024***

26.     At approximately 12:47 p.m., law enforcement began an interview with WILSON. Wilson was informed of his *Miranda* rights, acknowledged those rights, and agreed to speak with law enforcement. In a recorded interview, WILSON admitted that he knew DEAN and that he and DEAN were driving near each other prior to being stopped by CPD. WILSON explained that DEAN was supposed to be headed east and WILSON west towards Schaumburg, that WILSON had been trying to get past DEAN's vehicle, and that WILSON was following GPS directions on his cell phone while they were driving in that area.

27.     At approximately 12:18 p.m., law enforcement began an interview with DEAN following his arrest. DEAN was informed of his *Miranda* rights, acknowledged those rights, and agreed to speak with law enforcement. During the recorded interview, DEAN acknowledged that WILSON had placed the firearm in the vehicle that DEAN was driving. DEAN explained that, sometime before law enforcement officers stopped the vehicles, WILSON directed DEAN to park near an auto shop. WILSON parked near DEAN's vehicle and left the vehicle WILSON was driving. DEAN explained that sometime later, WILSON entered the front seat of DEAN's vehicle while sweating heavily. DEAN stated that WILSON then took off his hat and shirt, and placed a firearm along with a white plastic bag that DEAN could see contained money into Vehicle 2 between the driver's seat and the center console. DEAN also related that after WILSON exited Vehicle 2, DEAN continued to drive knowing the firearm was present in his vehicle.

12

28.     As described above, Sergeant 1 observed the firearm underneath the driver seat of Vehicle 2. A still from Sergeant 1's body-worn camera footage, pictured below, shows the firearm was underneath the driver seat at the time of the stop, not between the driver seat and center console.



***DEAN is a Convicted Felon Prohibited from Possessing a Firearm***

29.     Based on my review of DEAN's criminal history, I know that on or about October 22, 2012, DEAN was convicted of possession of a controlled substance, in the Circuit Court of Cook County, Illinois, and sentenced to 18 months' imprisonment.

30.     On or about June 18, 2024, I spoke to FBI Special Agent Dustin Gourley, who told me the following:

    a.     Special Agent Gourley is a certified interstate nexus expert for firearms and ammunition;

    b.     Based on his training and experience and the research he conducted, Special Agent Gourley determined that the Glock 43 semi-automatic

13

handgun bearing serial number BATC989, was manufactured outside of the state of Illinois.

31.    Therefore, the firearm that DEAN possessed traveled in interstate commerce prior to DEAN's possession of the firearm.

### Conclusion

32.    Based on the facts described above, I respectfully submit there is probable cause to believe that:

a.    KENNY ROUNDTREE WILSON, by force and violence and by intimidation, did take from the person and presence of a bank employee United States Currency belonging to and in the care, custody, control, management, and possession of the PNC Bank located at 3940 North Harlem Avenue in Chicago, Illinois, the deposits of which were then insured by the FDIC, in violation of Title 18, United States Code, Section 2113(a);

b.    KENNY ROUNDTREE WILSON did use, carry, and brandish a firearm during and in relation to a crime of violence, namely bank robbery in violation of Title 18, United States Code, Section 2113(a), in violation of Title 18, United States Code, Section 924(c); and

c.    ALLEN DEAN, knowing that he had been convicted of a crime punishable by a term of imprisonment exceeding one year, did knowingly possess, in and affecting interstate commerce, a Glock, Inc. 43 9mm semi-automatic handgun bearing serial number BATC989, which firearm had traveled in interstate commerce

prior to DEAN's possession of the firearm, in violation of Title 18, United States Code, Section 922(g)(1).

FURTHER AFFIANT SAYETH NOT.

_____
JOHN HANLON
Special Agent, Federal Bureau of Investigation


SWORN TO AND AFFIRMED by telephone June 20, 2024.

_____
Honorable JEFFREY COLE
United States Magistrate Judge

15